THIBODEAUX, Chief Judge,
dissenting.
hi dissent from the majority’s decision to affirm the judgment of the trial court awarding domiciliary status to Mr. Gal-land.
Dr. Daniel Lonowski testified as an expert in clinical psychology. He conducted an evaluation of all of the parties in November 2011. He testified that his reports and conclusions were as valid at the time of this custody trial as they were in November 2011. He reached this conclusion despite being questioned about the potential impact of Mrs. Galland pleading guilty to disturbing the peace and having a pending charge of cruelty to the infirm. He further based his conclusion despite his knowledge of Mr. Galland’s being accused of physical abuse of the child. Because of the volatility of the relationship between Mrs. Galland and the paternal grandparents, he was not surprised by the criminal charges, and he could have predicted the spanking of the minor child because of his characterization of Mr. Galland as being “emotionally reactive in ’ conflict situations.”
The trial judge observed that “Dr. Lo-nowski had thorough reports based on his interview with all the parties.” He further observed that Dr. Lonowski was “the most important witness on the case.” The trial judge did not give any- weight whatsoever to Dr. Lonowski’s findings despite Dr. Lo-nowski being “the most |2important witness on the case.” Dr. Lonowski was not contradicted. It is axiomatic that “the trier of fact should accept as true the uncon-tradicted testimony of a plaintiff witness, absent a sound reason for his rejection.” *1098 Johnson v. Ins. Co. N. Am., 454 So.2d 1113, 1117 (La.1984). The trial court had no sound reason for the failure to consider Dr. Lonowski’s testimony, and did not articulate a reason.
Dr. Lonowski testified that Mr. Galland “would tend to be reactive in the face of novelty ... emotionally reactive in conflict situations.” Certainly, the long history of animosity and litigation between these parents suggests a high potential for “conflict situations.” Mr. Galland, according to Dr. Lonowski, “could engage in somewhat devious maneuvers ... in order to achieve his goals,” and “he can become quite impatient under stress.”
Moreover, Dr. Lonowski unequivocally testified as follows:
Q. Can you explain where that recommendation came from other then
A. It came from my impression from all four parties. The children, the observation of the children with both parents seemed relatively equal in terms of the affection displayed, the attention, the management of the children in the observation period. Their perceptions of the children another, the way the children related to each of their parents, the parenting stress index indicated that both parents were experiencing normal parenting stress, they could manage their children well, although with perhaps different styles of parenting, that was the crux of their conflict while in their marriage as well as after their marriage. So, putting all that together there was no psychological disorder discerned from each parent, they had certain different personality styles, he’s more of a risk taker caviler [sic], shoot from the hip, she’s more compulsive and organized and perhaps a little rigid in terms of her outlook in life and so those two personalities don’t work very well, obviously it didn’t work for their marriage, they didn’t know how to make that blend, and didn’t work in terms of their parenting styles so, it seemed to me that the tender ages of the children, the fact that they were that age and perhaps needed more of the maternal influence as well, but not necessarily because I think both parents could meet the children’s needs, but I think, I can’t specifically state any one particular factor that lent itself to the mother having domiciliary custody except that it just, the feel of it from all the data suggested that that would be best for the kids.
hQ: So no any one particular factor, but a cumulative effect of your evaluation?
A: Right. Some of these things get close, they tend to get close and I’m not sure if an evaluator can always dismiss the fact, raised by the momma and the tender age of the children, that they perhaps need a maternal influence early on, that may have had a factor in it.
I am cognizant that a trial court has discretion in child custody matters. However, that discretion is not immutable and must be based on sound judgment after a consideration of the entire record. I am convinced that the trial court abused its discretion in awarding Mr. Galland domiei-lary status based on the foregoing reasons. I would reverse the judgment of the trial court and remand for the implementation of a Joint Custody Order.